## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KERRY, INC., ) | |
| ) | Case No. 16-CV-858 |
| Plaintiff, ) | |
| ) | Judge: |
| vs. ) | |
| ) | |
| RAMON SABATER S.A.U., a Foreign ) | |
| Corporation, and SABATER SPICES NORTH ) | |
| AMERICA, INC., a Maryland Corporation, ) | |
| ) | |
| Defendants. ) | |

### COMPLAINT

NOW COMES Plaintiffs, KERRY, INC., ROYAL & SUNALLIANCE INSURANCE AGENCY, INC., and ROYAL & SUNALLIANCE INSURANCE plc, by and through their undersigned attorneys, and complain of Defendants, RAMON SABATER S.A.U. and SABATER SPICES NORTH AMERICA, INC., as follows:

### Parties

1. Kerry, Inc. ("Kerry") is a Delaware corporation with its principal place of business in the State of Wisconsin. Kerry is a citizen of both Delaware and Wisconsin pursuant to 28 U.S.C. § 1332(c).

2. Ramon Sabater S.A.U. ("Ramon Sabater") is a Spanish corporation headquartered in Murcia, Spain.

3. Sabater Spices North America, Inc. ("Sabater N.A.") is a Maryland corporation with its principal place of business in the State of Maryland. Sabater N.A. is a citizen of Maryland pursuant to 28 U.S.C. § 1332(c).

{34874: 003: 02030560.DOC : }

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332, as this action contains parties of diverse states and an amount in controversy exceeding $75,000, exclusive of interest and costs of this litigation.

5. Venue is appropriate in this District pursuant to 28 U.S.C. §1391(a) because the underlying contracts for sales of goods were formed in the Western District of Wisconsin, payments for the subject goods were made from the Western District of Wisconsin, and damages were sustained in the Western District of Wisconsin.

## General Allegations

General Background

6. Kerry is in the business of manufacturing, selling and distributing food ingredients. At times, Kerry does business as "Kerry Ingredients & Flavours."

7. Ramon Sabater is in the business of processing, selling and distributing spices.

8. Sabater N.A. is in the business of importing and distributing Ramon Sabater's spices within the United States.

9. Ramon Sabater lists Sabater N.A. as its North American agent on its website.

10. Upon information and belief, at all relevant times, Sabater N.A. was an actual agent of Ramon Sabater.

11. Upon information and belief, at all relevant times, Sabater N.A. was an apparent agent of Ramon Sabater.

The Purchase Order for the Sage

12.     On or about December 11, 2013, Kerry submitted Purchase Order number P414637-00 (the "Purchase Order") to Ramon Sabater offering to purchase 9,432.359 pounds of rubbed sage, described on the Purchase Order as "SAGE RUBBED DALMATIAN SIFT HT." A true and accurate copy of the Purchase Order is attached hereto as Exhibit 1.

13.     On or about March 20, 2014, Kerry received sage pursuant to the Purchase Order, which was identified as Ramon Sabater lot number N1448 (the "Sage").

14.     Upon information and belief, the Sage was delivered to Kerry through Ramon Sabater's agent, Sabater N.A.

15.     By virtue of Ramon Sabater's sale of the Sage pursuant to the Purchase Order, Ramon Sabater accepted the terms and conditions of the Purchase Order.

16.     Paragraph 2 of the terms and conditions of the Purchase Order provides, among other things:

> INDEMNIFICATION:  Seller [Ramon Sabater] agrees to indemnify and hold harmless Buyer [Kerry], its affiliates, officers, employees, agents, successors, assignors and customers from any and all loss, damage, liability, cost or expense of whatever nature or cause arising out of any conduct, act, or omission of Seller in its performance of this purchase order.  The foregoing includes, without limitation, any of Buyer's incidental or consequential damages and any injury or damage to the person or property of Buyer, its affiliates, officers, employees, agents, successors, assignors and customers, Seller, or any third party, and their respective employees, agents, and independent contractors. …

17.     Paragraph 6 of the terms and conditions of the Purchase Order provides, among other things:

> Seller guarantees that the goods purchased hereunder are as of the date of delivery or shipment, to be, on such date not adulterated or misbranded within the meaning of the Federal Food, Drug and Cosmetic Act, as amended including, but not limited to, the Food Additives amendment of 1958, and are not articles which may not, under the provisions of Section

    404 or 505 of the Act, be introduced into interstate commerce or similar state or local statute or ordinance.

  18. Paragraph 16 of the terms and conditions of the Purchase Order provides, among other things:

> In the event any goods furnished hereunder are or become defective in any respect, whatsoever, Seller agrees to defend, indemnify and hold harmless Buyer from any and all loss, liability, cost or expense (including attorney's fees) by reasons of any injury or damage, whether direct or indirect, consequential, or otherwise, including all claims of such injury or damage, to persons or property related to such defect, Seller also agrees to indemnify and pay to Buyer any and all incidental and consequential damages Buyer may incur by reason of any defective or non-conforming goods delivered to Buyer.

<u>Defective Sage is Delivered to Plaintiff</u>

  19. After purchasing and receiving the Sage, Kerry incorporated the Sage into its own food products which it sold and distributed to its customers.

  20. In certain instances, Kerry's customers incorporated the food products containing Sage that they received from Kerry into their own food products, and in certain instances, such customers' food products were sold to distributers and/or retailers.

  21. Subsequently, one of Kerry's products tested positive for the *Salmonella* bacteria.

  22. Testing confirmed that the Sage was the source of the *Salmonella* bacteria found in Kerry's product.

  23. The Sage sold to Kerry was defective, contaminated, unsafe, unfit for human consumption and objectionable within the food industry.

  24. The Sage sold to Kerry was adulterated pursuant to state and federal laws and regulations, including, without limitation, Wisconsin Statute 97.02 and 21 U.S.C. 342.

  25. Ramon Sabater's and Sabater N.A.'s production, sale and distribution of the adulterated Sage were in violation of Wisconsin Statute 97.10 and 21 U.S.C. 331.

26. Ramon Sabater's and Sabater N.A.'s production, sale and distribution of the adulterated Sage directly and proximately caused property damage to Kerry's product and that of Kerry's customers, and diminished the value of Kerry's product and that of Kerry's customers.

27. As a direct and proximate result of Ramon Sabater's and Sabater N.A.'s sale of the Sage to Kerry, Kerry sustained significant expenses, losses, and damages, including, without limitation, the cost of reimbursing Kerry's customers for their expenses, losses, damages, and lost sales and profits, incurred and sustained as a result of the Sage, and costs associated with accountants and attorneys.

28. No later than June 24, 2014, Kerry advised Ramon Sabater of the defective nature of the Sage and advised Ramon Sabater and its duly authorized agents that Kerry's customers would be making claims with respect to same.

29. Since June 24, 2014, Kerry continually updated Ramon Sabater and its duly authorized agents regarding the nature and extent of Kerry's claims and the claims that Kerry's customers were asserting.

## COUNT I
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(Ramon Sabater S.A.U.)

30. Kerry reasserts and realleges paragraphs 1 through 27 as and for this paragraph 30 as though fully set forth herein.

31. At all times relevant to this cause of action, Ramon Sabater was a merchant with respect to rubbed sage.

32. At all times relevant to this cause of action, Ramon Sabater was a merchant with respect to the Sage.

33. The transactions involving the sale of the Sage from Ramon Sabater to Kerry included an implied warranty that the Sage would be merchantable.

34. The Sage sold to Kerry failed to be merchantable for one or more of the following reasons:

   a. it was adulterated;

   b. it was hazardous to human health;

   c. it was objectionable within the industry;

   d. it was of less than fair average quality;

   e. it was not fit for the ordinary purposes for which it is used; and/or

   f. it did not conform to the promises or affirmations of fact made by Ramon Sabater, including its characteristics, a lack of defects, and/or its composition.

35. Ramon Sabater breached the implied warranty of merchantability when it sold to Kerry defective Sage.

36. Kerry provided Ramon Sabater with reasonable and timely notice of Ramon Sabater's breach of the implied warranty of merchantability.

37. Ramon Sabater's breach of the implied warranty of merchantability caused property damage to Kerry's product and that of Kerry's customers, and diminished the value of Kerry's product and that of Kerry's customers.

38. As a direct and proximate result of Ramon Sabater's breach of the implied warranty of merchantability, Kerry sustained significant expenses, losses, and damages, including, without limitation, the cost of reimbursing Kerry's customers for their expenses, losses, damages, and lost sales and profits, incurred and sustained as a result of the Sage, and costs associated with accountants and attorneys.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT II
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
(Ramon Sabater S.A.U.)

39. Kerry reasserts and realleges paragraphs 1 through 27 as and for this paragraph 39 as though fully set forth herein.

40. At all times relevant to this cause of action, Ramon Sabater knew that Kerry would incorporate the Sage it into its own food products which would subsequently be purchased by its customers and ultimately individual consumers who would ingest the food.

41. At all times relevant to this cause of action, Kerry relied on Ramon Sabater's skill and judgment as a seller of sage to provide Kerry with sage which was suitable for Kerry's needs.

42. At all times relevant to this cause of action, Ramon Sabater knew Kerry was relying on its skill and judgment as a seller of sage.

43. Ramon Sabater breached the implied warranty of fitness for a particular purpose when it sold and delivered to Kerry the defective Sage.

44. Kerry provided Ramon Sabater with reasonable and timely notice of Ramon Sabater's breach of the implied warranty of fitness for a particular purpose.

45. Ramon Sabater's breach of the implied warranty of fitness for a particular purpose caused property damage to Kerry's product and that of Kerry's customers, and diminished the value of Kerry's product and that of Kerry's customers.

46. As a direct and proximate result of Ramon Sabater's breach of the implied warranty of fitness for a particular purpose, Kerry sustained significant expenses, losses, and damages, including, without limitation, the cost of reimbursing Kerry's customers for their expenses, losses, damages, and lost sales and profits, incurred and sustained as a result of the Sage, and costs associated with accountants and attorneys.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY
(Ramon Sabater S.A.U.)

47. Kerry reasserts and realleges paragraphs 1 through 27 as and for this paragraph 47 as though fully set forth herein.

48. Ramon Sabater expressly represented to Kerry that the Sage would be suitable for use in food products and microbiologically safe, would not be adulterated, would be fit for human consumption and would be in complete compliance with state and federal laws and regulations.

49. Ramon Sabater's description of the product and affirmations of fact regarding the product's qualities were express warranties.

50. Ramon Sabater's express warranties became part of the basis of bargain for Kerry's purchase of the Sage.

51. The Sage Kerry received from Ramon Sabater was contaminated with *Salmonella* and did not conform to the express warranties.

52. Kerry provided Ramon Sabater with reasonable and timely notice of Ramon Sabater's breach of warranty.

53. Ramon Sabater's breach of express warranty caused property damage to Kerry's product and that of Kerry's customers, and diminished the value of Kerry's product and that of Kerry's customers.

54. As a direct and proximate result of Ramon Sabater's breach of express warranty, Kerry sustained significant expenses, losses, and damages, including, without limitation, the cost of reimbursing Kerry's customers for their expenses, losses, damages, and lost sales and profits, incurred and sustained as a result of the Sage, and costs associated with accountants and attorneys.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT IV
## BREACH OF EXPRESS INDEMNIFICATION
(Ramon Sabater S.A.U.)

55. Kerry reasserts and realleges paragraphs 1 through 54 as and for this paragraph 55 as though fully set forth herein.

56. Kerry's purchase of the Sage was made pursuant to the Purchase Order.

57. Ramon Sabater's sale and delivery of the Sage pursuant to the Purchase Order constituted Ramon Sabater's acceptance of the terms and conditions therein.

58. Paragraph 2 of the terms and conditions of the Purchase Order provides, among other things:

> INDEMNIFICATION: Seller [Ramon Sabater] agrees to indemnify and hold harmless Buyer [Kerry], its affiliates, officers, employees, agents, successors, assignors and customers from any and all loss, damage, liability, cost or expense of whatever nature or cause arising out of any conduct, act, or omission of Seller in its performance of this purchase order. The foregoing includes, without limitation, any of Buyer's incidental or consequential damages and any injury or damage to the person or property of Buyer, its affiliates, officers, employees, agents, successors, assignors and customers, Seller, or any third party, and their respective employees, agents, and independent contractors. …

59. No later than June 24, 2014, Kerry advised Ramon Sabater of the defective nature of the Sage and advised Ramon Sabater and its duly authorized agents that Kerry's customers would be making claims with respect to same.

60. Since June 24, 2014, Kerry continually updated Ramon Sabater and its duly authorized agents regarding the nature and extent of Kerry's claims and the claims that Kerry's customers were asserting.

61. Ramon Sabater has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry.

62. Ramon Sabater has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry's customers, leaving Kerry in a position of having to reimburse its customers for their losses.

63. Despite demands made by Kerry, Ramon Sabater has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry.

64. Despite demands made by Kerry, Ramon Sabater has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry's customers, leaving Kerry in a position of having to reimburse its customers for their losses.

65. No later than July 7, 2014, Ramon Sabater's insurance carrier received notice of Kerry's claim and those asserted by Kerry's customers.

66. Despite demands made by Kerry, Ramon Sabater and its insurance carrier have failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry.

67. Despite demands made by Kerry, Ramon Sabater and its insurance carrier have failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry's customers, leaving Kerry in a position of having to reimburse its customers for their losses.

68. The expenses, losses and damages, incurred and sustained by Kerry and its customers were the direct and proximate result of Ramon Sabater's production, sale, and/or distribution of defective Sage.

69. Kerry's expenses, losses and damages were also the direct and proximate result of Ramon Sabater's failure to indemnify Kerry for its losses and those of its customers.

70. Kerry is entitled to complete indemnification by Ramon Sabater for all sums claimed by Kerry's customers, plus all sums, costs, fees and other amounts incurred by Kerry in responding to said customer claims.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT V
## IMPLIED INDEMNIFICATION
(Ramon Sabater S.A.U.)

71. Kerry reasserts and realleges paragraphs 1 through 54 as and for this paragraph 71 as though fully set forth herein.

72. Kerry's customers have asserted claims against Kerry for monetary compensation for the property damage they sustained, including the associated losses, damages, and expenses, arising from their purchase of product containing the defective Sage, and their incorporation of the defective Sage into their own products.

73. The expenses, losses, and damages, incurred and sustained by Kerry's customers were the direct and proximate result of Ramon Sabater's production, sale, and/or distribution of defective Sage.

74. Kerry is entitled to complete indemnification by Ramon Sabater for all sums claimed by Kerry's customers, plus all sums, costs, fees and other amounts incurred by Kerry in responding to said customer claims.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT VI
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(Sabater Spices North America, Inc.)

75. Kerry reasserts and realleges paragraphs 1 through 27 as and for this paragraph 75 as though fully set forth herein.

76. At all times relevant to this cause of action, Sabater N.A. was a merchant with respect to rubbed sage.

77. At all times relevant to this cause of action, Sabater N.A. was a merchant with respect to the Sage.

78. The transactions involving the sale of the Sage from Sabater N.A. to Kerry included an implied warranty that the Sage would be merchantable.

79. The Sage sold to Kerry failed to be merchantable for one or more of the following reasons:

    a. it was adulterated;

    b. it was hazardous to human health;

    c. it was objectionable within the industry;

    d. it was of less than fair average quality;

    e. it was not fit for the ordinary purposes for which it is used; and/or

    f. it did not conform to the promises or affirmations of fact made by Sabater N.A., including its characteristics, a lack of defects, and/or its composition.

80. Sabater N.A. breached the implied warranty of merchantability when it sold to Kerry defective Sage.

81. Kerry provided Sabater N.A. with reasonable and timely notice of Sabater N.A.'s breach of the implied warranty of merchantability.

82. Sabater N.A's breach of the implied warranty of merchantability caused property damage to Kerry's product and that of Kerry's customers, and diminished the value of Kerry's product and that of Kerry's customers.

83. As a direct and proximate result of Sabater N.A.'s breach of the implied warranty of merchantability, Kerry sustained significant expenses, losses, and damages, including, without

limitation, the cost of reimbursing Kerry's customers for their expenses, losses, damages, and lost sales and profits, incurred and sustained as a result of the Sage, and costs associated with accountants and attorneys.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Plaintiff, further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT VII
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
(Sabater Spices North America, Inc.)

84. Kerry reasserts and realleges paragraphs 1 through 27 as and for this paragraph 84 as though fully set forth herein.

85. At all times relevant to this cause of action, Sabater N.A. knew that Kerry would incorporate the Sage it into its own food products which would subsequently be purchased by its customers and ultimately individual consumers who would ingest the food.

86. At all times relevant to this cause of action, Kerry relied on Sabater N.A.'s skill and judgment as a seller of sage to provide Kerry with sage which was suitable for Kerry's needs.

87. At all times relevant to this cause of action, Sabater N.A. knew Kerry was relying on its skill and judgment as a seller of sage.

88. Sabater N.A. breached the implied warranty of fitness for a particular purpose when it sold and delivered to Kerry the defective Sage.

89. Kerry provided Sabater N.A. with reasonable and timely notice of Sabater N.A.'s breach of the implied warranty of fitness for a particular purpose.

90. Sabater N.A.'s breach of the implied warranty of fitness for a particular purpose caused property damage to Kerry's product and that of Kerry's customers, and diminished the value of Kerry's product and that of Kerry's customers.

91. As a direct and proximate result of Sabater N.A.'s breach of the implied warranty of fitness for a particular purpose, Kerry sustained significant expenses, losses, and damages, including, without limitation, the cost of reimbursing Kerry's customers for their expenses, losses, damages, and lost sales and profits, incurred and sustained as a result of the Sage, and costs associated with accountants and attorneys.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT VIII
## BREACH OF EXPRESS WARRANTY
(Sabater Spices North America, Inc.)

92. Kerry reasserts and realleges paragraphs 1 through 27 as and for this paragraph 92 as though fully set forth herein.

93. Sabater N.A. expressly represented to Kerry that the Sage would be suitable for use in food products and microbiologically safe, would not be adulterated, would be fit for human consumption and would be in complete compliance with state and federal laws and regulations.

94. Sabater N.A.'s description of the product and affirmations of fact regarding the product's qualities were express warranties.

95. Sabater N.A.'s express warranties became part of the basis of bargain for Kerry's purchase of the Sage.

96. The Sage Kerry received from Sabater N.A. was contaminated with *Salmonella* and did not conform to the express warranties.

97. Kerry provided Sabater N.A. with reasonable and timely notice of Sabater N.A.'s breach of warranty.

98. Sabater N.A.'s breach of express warranty caused property damage to Kerry's product and that of Kerry's customers, and diminished the value of Kerry's product and that of Kerry's customers.

99. As a direct and proximate result of Sabater N.A.'s breach of express warranty, Kerry sustained significant expenses, losses, and damages, including, without limitation, the cost of reimbursing Kerry's customers for their expenses, losses, damages, and lost sales and profits, incurred and sustained as a result of the Sage, and costs associated with accountants and attorneys.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT IX
**BREACH OF EXPRESS INDEMNIFICATION**
(Sabater Spices North America, Inc.)

100. Kerry reasserts and realleges paragraphs 1 through 54 as and for this paragraph 100 as though fully set forth herein.

101. Kerry's purchase of the Sage was made pursuant to the Purchase Order.

102. Sabater N.A.'s sale and delivery of the Sage pursuant to the Purchase Order constituted Sabater N.A.'s acceptance of the terms and conditions therein.

103. Paragraph 2 of the terms and conditions of the Purchase Order provides, among other things:

> INDEMNIFICATION: Seller [Ramon Sabater] agrees to indemnify and hold harmless Buyer [Kerry], its affiliates, officers, employees, agents, successors, assignors and customers from any and all loss, damage, liability, cost or expense of whatever nature or cause arising out of any conduct, act, or omission of Seller in its performance of this purchase order. The foregoing includes, without limitation, any of Buyer's incidental or consequential damages and any injury or damage to the person or property of Buyer, its affiliates, officers, employees, agents, successors, assignors and customers, Seller, or any third party, and their respective employees, agents, and independent contractors. …

104. No later than June 24, 2014, Kerry advised Sabater N.A. of the defective nature of the Sage and advised Sabater N.A. and its duly authorized agents that Kerry's customers would be making claims with respect to same.

105. Since June 24, 2014, Kerry continually updated Sabater N.A. and its duly authorized agents regarding the nature and extent of Kerry's claims and the claims that Kerry's customers were asserting.

106. Sabater N.A. has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry.

107. Sabater N.A. has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry's customers, leaving Kerry in a position of having to reimburse its customers for their losses.

108. Despite demands made by Kerry, Sabater N.A. has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry.

109. Despite demands made by Kerry, Sabater N.A. has failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry's customers, leaving Kerry in a position of having to reimburse its customers for their losses.

110. No later than July 7, 2014, Sabater N.A.'s insurance carrier received notice of Kerry's claim and those asserted by Kerry's customers.

111. Despite demands made by Kerry, Sabater N.A. and its insurance carrier have failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry.

112. Despite demands made by Kerry, Sabater N.A. and its insurance carrier have failed and refused to indemnify and hold Kerry harmless from losses, damage, liability, cost and expense incurred by Kerry's customers, leaving Kerry in a position of having to reimburse its customers for their losses.

113. The expenses, losses and damages, incurred and sustained by Kerry and its customers were the direct and proximate result of Sabater N.A.'s production, sale, and/or distribution of defective Sage.

114. Kerry's expenses, losses and damages were also the direct and proximate result of Sabater N.A.'s failure to indemnify Kerry for its losses and those of its customers.

115. Kerry is entitled to complete indemnification by Sabater N.A. for all sums claimed by Kerry's customers, plus all sums, costs, fees and other amounts incurred by Kerry in responding to said customer claims.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72.  Kerry further requests costs,

attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT X
## IMPLIED INDEMNIFICATION
(Sabater Spices North America, Inc.)

116. Kerry reasserts and realleges paragraphs 1 through 54 as and for this paragraph 116 as though fully set forth herein.

117. Kerry's customers have asserted claims against Kerry for monetary compensation for the property damage they sustained, including the associated losses, damages, and expenses, arising from their purchase of product containing the defective Sage, and their incorporation of the defective Sage into their own products.

118. The expenses, losses, and damages, incurred and sustained by Kerry's customers were the direct and proximate result of Sabater N.A.'s production, sale, and/or distribution of defective Sage.

119. Kerry is entitled to complete indemnification by Sabater N.A. for all sums claimed by Kerry's customers, plus all sums, costs, fees and other amounts incurred by Kerry in responding to said customer claims.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

## COUNT XI
## VICARIOUS LIABILITY
(Ramon Sabater S.A.U.)

120. Kerry reasserts and realleges paragraphs 1 through 119 as and for this paragraph 120 as though fully set forth herein.

121. At all relevant times, Sabater N.A. was acting as the actual and/or apparent agent of Ramon Sabater.

122. Ramon Sabater is vicariously liable to Kerry for any and all damages caused by Sabater N.A.

WHEREFORE, Kerry requests that this Court award damages in an amount to be determined at trial, but in no circumstances less than $419,954.72. Kerry further requests costs, attorneys' fees, and prejudgment interest related to this action, together with any such additional relief this Court deems just and proper.

Dated: January 5, 2017　　　　　　　　　Respectfully submitted,

**KERRY, INC.**

By:　/s/ Jeffrey J. Asperger
　　　One of its attorneys
　　　Jeffrey J. Asperger
　　　Steven R. Rogovin
　　　MELTZER PURTILL & STELLE LLC
　　　300 South Wacker Drive, Suite 2300
　　　Chicago, IL 60606
　　　Tel: (312) 987-9900
　　　Fax: (312) 987-9854
　　　JAsperger@mpslaw.com
　　　srogovin@mpslaw.com